IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| BRIDGET BROWN, | : | |
| --- | --- | --- |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 17-1827 |
| ARIA HEALTH, | : | |
| Defendant. | : | |

**MEMORANDUM**

Tucker, J.                                                                            April 17, 2019

Before the Court is Defendant's Motion for Summary Judgment (Doc. 22), Plaintiff's response thereto (Doc. 27), and Defendant's reply (Doc. 28). Upon consideration of the Parties' submissions and for the reasons set forth below, Defendant's Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART.

## I. PROCEDURAL HISTORY

On or about April 21, 2017, Plaintiff Bridget Brown ("Plaintiff") commenced this action in the Eastern District of Pennsylvania against Defendant Aria Health ("Defendant"). *See* Pl.'s Compl., Doc. 1. Plaintiff asserts claims of discrimination under the Americans with Disabilities Act ("ADA"), the Pregnancy Discrimination Act ("PDA"), and the Pennsylvania Human Relations Act ("PHRA") in response to incidents that occurred while Plaintiff was working at Defendant's Bucks County campus. Pl.'s Compl. 6–7, Doc. 1. On July 31, 2017, Defendant filed its Answer and Affirmative Defenses. *See* Def.'s Answer, Doc. 6.

Discovery was completed on June 5, 2018. *See* Scheduling Order, Doc. 12. Thereafter, on May 31, 2018, Plaintiff moved to compel Defendant to produce documents and information

concerning "other employees who were similar in their inability to work, including those limited by a work injury and those limited by a temporary or permanent disability." Pl.'s Mot. Compel 2, Doc. 17. With respect to persons working in Defendant's Nursing Department, Plaintiff sought, *inter alia*, four years of documents and information concerning any workers compensation claims, accommodations, or light duty assignments; and approximately two years of documents and information concerning any employee who was pregnant. Pl.'s Mot. Compel Ex. A, Ex. B, Doc. 17.

On July 2, 2018, relying on *Young v. United Parcel Serv.*, the Court issued an Order (Doc. 19) denying Plaintiff's motion to compel, finding that Plaintiff's requested discovery was too broad as it did not concern employees who were similar in their ability or inability to work. 135 S. Ct. 1338, 1354 (2015) (explaining that to establish a prima facie case for pregnancy discrimination, a plaintiff must demonstrate, *inter alia*, that the employer accommodated other employees who were "similar in their ability or inability to work."). The Court explained that Plaintiff must demonstrate that she was treated differently than other nurses who requested not to work in rooms where fluoroscopy or bone cement were being used.

On July 3, 2018 Plaintiff moved for reconsideration (Doc. 20) of the Court's July 2, 2018 Order (Doc. 19), requesting that the Court order discovery regarding other nurses at Defendant's Bucks County campus who, during the last five years, asked to be excluded from fluoroscopy or bone cement rooms. The Court denied the motion as moot (Doc. 31) because Defendant established that no nurses had made such requests in the last five years.

This matter is now ripe for disposition. For the reasons set forth below, summary judgment is granted in part and denied in part.

## II. STATEMENT OF FACTS

On October 5, 2015, Defendant hired Plaintiff as a Staff Registered Operating Room ("OR") Nurse at Defendant's Bucks County campus. Statement of Stipulated Material Facts ¶1, Doc. 23. As an OR nurse, Plaintiff was responsible for ensuring that surgical cases are documented appropriately and keyed into the computer system; preparing the OR before surgery; providing necessary supplies once surgery begins; and relieving staff during breaks. Pl. Dep. 19:8–24, 20:1–2; Rena Utsey Dep. 2:18–24, 13:1–4.

On May 2, 2016, Plaintiff learned that she was pregnant. Pl. Dep. 28:9–10; Def.'s Am. Mem. Supp. Mot. Summ. J. 5, Doc. 25. Thereafter, on May 10, 2016, Plaintiff confirmed her pregnancy with her gynecologist and requested a physician's note that excluded her from rooms where fluoroscopy—a type of x-ray—was used. Pl. Dep. 32:10–25; Def.'s Am. Mem. Supp. Mot. Summ. J. 5, Doc. 25. The physician's note specified that "[Plaintiff] [wa]s restricted from fluoroscopy rooms until further notice." Pl. Dep. 35:10–25, Ex. P-6.

The next day, on May 11, 2016, Plaintiff provided her physician's note to Ms. Patricia Leichner ("Ms. Leichner")—Director of Perioperative Services at Defendant's Bucks County campus. Pl. Dep. 37:10–19; Def.'s Am. Mem. Supp. Mot. Summ. J. 5, Doc. 25. Ms. Leichner informed Plaintiff that her physician's note "was too restrictive and that [Plaintiff] would[] [not] be able to work in [Ms. Leichner's] department if [Plaintiff] submitted t[he] note." Pl. Dep. 37:21–25, 38:1–2; *see* Patricia Leichner Dep. 36:11–24, 37:1–8; 43:1–5. Ms. Leichner explained that "accepting a note stating zero fluor[oscopy] for the duration of her pregnancy would not be probable especially on 'on call cases' and off shift cases as she is a 12-hr employee." Pl.'s Mem. Opp'n Def.'s Mot. Summ. J., Ex. H (Notes of Patricia Leichner), Doc 27.

Ms. Leichner stated that they would try to minimize Plaintiff's contact with fluoroscopy but noted that in the past, other pregnant nurses had worked in the OR without issue. Pl. Dep. 38:18–22; Patricia Leichner Dep. 39:20–22, 31:17–22, 49:14–19; Def.'s Am. Mem. Supp. Mot. Summ. J. 5, Doc. 25. Ms. Leichner stated that if Plaintiff was to work in an OR using fluoroscopy, Plaintiff would receive lead protective clothing, portable lead shields that she could stand behind in the OR, and the option to step out of the OR when fluoroscopy was used. Pl. Dep. 39:2–25, 40:1–17; Patricia Leichner Dep. 41:3–14; Rena Utsey Dep. 52:16–24. Ms. Leichner further informed Plaintiff that if she declared her pregnancy by submitting a form to Defendant, she would also receive a fetal monitoring badge which the Hospital would monitor to make sure that Plaintiff's baby received no more than 0.5 rem of radiation, as well as a badge to monitor Plaintiff's own radiation exposure. Pl. Dep. 39:2–25, 54:10–15; Def.'s Am. Mem. Supp. Mot. Summ. J. 5, Doc. 25.

On May 12, 2016, Plaintiff met with Mr. Barry Miltner ("Mr. Miltner")—Senior Employee Relations Specialist. Pl. Dep. 46:13–23; Barry Miltner Dep. 30:9–24, 31:1–7. During this meeting, Mr. Miltner informed Plaintiff that she could seek other jobs within Defendant's health system if she decided not to work in ORs where fluoroscopy was used. Pl. Dep. 46:24–25, 47:1–10; Def.'s Am. Mem. Supp. Mot. Summ. J. 6, Doc 25.

On May 13, 2016, Plaintiff declared her pregnancy. *See* Pl.'s Mem. Opp'n Def.'s Mot. Summ. J., Ex. I (Declaration of Pregnancy), Doc 27. After Plaintiff declared her pregnancy, she continued to work and used the lead skirt, vest and thyroid shield, and lead shielding that she could wheel into the OR. Pl. Dep. 55:10–17; Rena Utsey Dep. 77:7–22. Although Plaintiff had the option to step out of the OR when fluoroscopy was used, she chose not to do so. Pl. Dep. 33:6–18, 40:15–22, 42:4–5; Def.'s Am. Mem. Supp. Mot. Summ. J. 7, Doc 25. Plaintiff

continued to look for other jobs after declaring her pregnancy. Pl. Dep. 48:10–12, 69:14–23; Barry Miltner Dep. 115:5–8.

On June 15, 2016, Plaintiff arrived at work and discovered that she was assigned to an OR using bone cement for her entire shift; bone cement is glue used to attach prosthesis to bone. Pl. Dep. 31:11–22, 58:6–10; Def.'s Am. Mem. Supp. Mot. Summ. J. 9, Doc 25; Barry Miltner Dep. 83:1–2. Plaintiff then texted Ms. Rena Utsey ("Ms. Utsey")—Operating Room Nurse Manager—that she was leaving work because she was sick. Rena Utsey Dep. 148:8–21; Pl. Dep. 61:1–4. Plaintiff called in sick on June 16, 2016, and on June 17, 2016, she visited a gynecologist. Pl. Dep. 64:1–24; Def.'s Am. Mem. Supp. Mot. Summ. J. 9, Doc 25. Plaintiff informed her gynecologist that she was working in ORs with fluoroscopy and bone cement. Pl. Dep. 65:15–25; Def.'s Am. Mem. Supp. Mot. Summ. J. 9, Doc 25. At Plaintiff's request, her gynecologist provided a physician's note stating that "[Plaintiff] is under our care for her pregnancy. It is unsafe for her to be in fluoroscopy or bone cement rooms at this time." Pl. Dep. 67:19–25, 68:1–9; Pl.'s Mem. Opp'n Def.'s Mot. Summ. J., Ex. K (Physician's Note), Doc 27; Def.'s Am. Mem. Supp. Mot. Summ. J. 10, Doc 25.

On June 17, 2016, Plaintiff submitted her physicians' notes from May 10, 2016 and June 17, 2016 to Mr. Miltner by email. Barry Miltner Dep. 79:14–24, 80:1–8; Pl. Dep. 68:16–25, 69:1–13. This was the first time that Plaintiff informed Defendant that she could not work in rooms with bone cement; Plaintiff's May 10, 2016 physician's note only restricted Plaintiff's contact with fluoroscopy. Pl. Dep. 35:10–25, Ex. P-6, 58:24–25, 59:1–2; Patricia Leichner Dep. 69:7–24, 70:1–7; Rena Utsey Dep. 156:20–23. On June 17, 2017, Plaintiff also "texted Ms. Leichner stating that she would not be returning to work until everything was sorted out with

HR." Def.'s Am. Mem. Supp. Mot. Summ. J. 10, Doc 25; Pl. Dep. 72:2–23. Plaintiff did not return to work after June 15, 2016. Barry Miltner Dep. 112:8–24.

On June 22, 2016, Plaintiff spoke with Ms. Leichner and Mr. Miltner by telephone. Pl. Dep. 77:2–21; Barry Miltner Dep. 103:6–17. During this meeting, Plaintiff informed Ms. Leichner and Mr. Miltner that she would be submitting her physicians' notes formally. Pl. Dep. 78:7–10; Barry Miltner Dep. 104:17–23. Mr. Miltner told Plaintiff that she could use paid time off to look for other positions. Barry Miltner Dep. 104:8–12; Pl. Dep. 79:1, 80:1–14.

The next day, Plaintiff met with Mr. Miltner in person. Pl. Dep. 79:20–21; Barry Miltner Dep. 107:1–4. Mr. Miltner provided Plaintiff with the necessary paperwork for a 30-day unpaid leave of absence to search for other employment. Pl. Dep. 9:22–24, 80:1–9; Barry Miltner Dep.107:5–23. Mr. Miltner further informed Plaintiff that she was ineligible for leave under the Family and Medical Leave Act. Barry Miltner Dep. 108:20–21.

Plaintiff did not submit any leave of absence forms, and she resigned from employment, effective June 29, 2016. Pl. Dep. 82:9–11.

### III.  STANDARD OF REVIEW

Summary judgment is awarded only when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012). To defeat a motion for summary judgment, there must be a factual dispute that is both genuine and material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, (1986); *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008). A "material" fact is one "that might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248. A dispute over a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The movant bears the initial burden of demonstrating the absence of a genuine dispute of a material fact. *Goldenstein v. Repossessors, Inc.*, 815 F.3d 142, 146 (3d Cir. 2016). "Where the defendant is the moving party, the burden is on the defendant to show that the plaintiff has failed to establish one or more essential elements of her case." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013). If the movant sustains its initial burden, "the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a *genuine issue for trial.*" *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249 (citations omitted); *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *See Horsehead Indus., Inc. v. Paramount Communications, Inc.*, 258 F.3d 132, 140 (3d Cir. 2001). Nonetheless, the court must be mindful that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

### A. Disability Discrimination

Although Plaintiff appears to have abandoned her claims for disability discrimination in response to Defendant's summary judgment motion, the Court will nonetheless conduct an analysis of Plaintiff's claims under the ADA and PHRA.

### i. ADA

In Count I, Plaintiff asserts a claim for violation of the ADA alleging that Defendant's actions constitute disability discrimination based on Plaintiff's pregnancy. Pl.'s Compl. 6–7, Doc. 1.

Employers are prohibited from discriminating based on disability with regard to job applications, hiring, advancement, or firing. 42 U.S.C.A. § 12112(a); 43 Pa. Cons. Stat. Ann. § 955(a) (West 2016). To establish a prima facie case of disability discrimination under the ADA, a plaintiff must demonstrate that she: (1) "has a 'disability'"; (2) is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) "has suffered an adverse employment action because of that disability." *Turner v. Hershey Chocolate USA*, 440 F.3d 604, 611 (3d Cir. 2006). An individual is deemed to have a disability if she: (1) has a "physical or mental impairment which substantially limits one or more major life activities"; (2) has "a record of such an impairment"; or (3) is "regarded as having such an impairment." 42 U.S.C. § 12102(1).

A routine pregnancy is not considered a disability within the meaning of the ADA. *See Ahern v. Eresearch Tech., Inc.*, 183 F. Supp. 3d 663, 668 (E.D. Pa. 2016); *Arozarena v. Carpenter Co.*, No. 17-5457, 2018 WL 2359143, at *2 (E.D. Pa. May 24, 2018) ("pregnancy itself is not a disability."); *see also Brennan v. Nat. Tele. Directory Corp.*, 850 F. Supp. 331, 344 (E.D. Pa. 1994) (rejecting pregnancy as a disability because it does not substantially limit one or more major life activities or constitute a physical impairment that affects bodily systems or organs). Although pregnancy, alone, does not constitute a disability under the ADA, certain impairments that a woman experiences as a result of pregnancy may qualify as a disability for

purposes of the statute.[1] *See Oliver v. Scranton Materials, Inc.*, No. 14-0549, 2015 WL 1003981, at *7 (M.D. Pa. Mar. 5, 2015) (finding complications from pregnancy sufficient to proceed under the ADA but ultimately dismissing the claims without prejudice because the plaintiff failed to specify the nature of said complications); *see also Varone v. Great Wolf Lodge of the Poconos, LLC*, No. 15-304, 2016 WL 1393393 (M.D. Pa. Apr. 8, 2016) (recognizing that although pregnancy alone may not be a disability under the ADA, impairments related thereto may qualify); *Moore v. CVS RX Servs.*, 142 F. Supp. 3d 321, 344–45 (M.D. Pa. 2015) (finding pregnancy-related complications could constitute a disability under the ADA). If a pregnant worker can demonstrate that she has a disability, her employer must provide reasonable accommodations unless such accommodation would impose an undue hardship on the employer. 42 U.S.C. § 12112(b)(5).

Here, there is no evidence that Plaintiff experienced pregnancy-related complications. During Plaintiff's deposition, she stated that her pregnancy was routine and without any complications. Pl. Dep. 89:16–20. Further, Plaintiff's Complaint does not allege any pregnancy-related complications. As there is no evidence to allow a jury to conclude that Plaintiff's pregnancy was a disability within the meaning of the ADA, this Court will grant summary judgment in favor of Defendant with respect to Count I.

    **ii. PHRA**

In Count II, Plaintiff asserts a claim for violation of the PHRA alleging that Defendant's actions constitute disability discrimination based on Plaintiff's pregnancy. Pl.'s Compl. 7–8, Doc. 1. Courts use the same standard to address PHRA claims as they do ADA claims. *Taylor v.*

---

[1] The EEOC has explained that complications during pregnancy, such as "a pregnancy-related impairment that substantially limits a major life activity," may qualify a woman for protection under the ADA. *See* 29 C.F.R. Pt. § 1630, App. § 1630.2(h).

*Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996)) (because the analysis for claims under the ADA is the same for claims under the PHRA, it is not necessary to perform a separate analysis). Accordingly, Plaintiff's disability discrimination claim under the PHRA is properly analyzed under the same standard as her disability discrimination claim under the ADA. Therefore, the foregoing analysis applies equally to Plaintiff's PHRA claim. Because no genuine issue of fact exists with respect to Plaintiff's ADA claim, the Court also grants summary judgment in favor of Defendant with respect to Count II.

### B. Pregnancy Discrimination

The Court next considers Plaintiff's claims that Defendant engaged in pregnancy discrimination in violation of the PDA—Count III—and PHRA—Count IV.

#### i. PDA

Count III of Plaintiff's Complaint alleges pregnancy discrimination in violation of the PDA. The PDA prohibits discrimination "on the basis of pregnancy, child birth, or related medical conditions." Pregnancy Discrimination Act, Pub. L. No. 95-555, 92 Stat. 2076 (codified as amended at 42 U.S.C. § 2000e *et seq.* (1991)). The PDA contains two clauses. The first clause amends Title VII of the Civil Rights Act of 1964 ("Title VII"), stating that discrimination on the basis of "pregnancy, childbirth, or related medical conditions" is a form of unlawful sex discrimination. The second clause provides that "women affected by pregnancy, childbirth, or related medical conditions" have a right to be treated the same as those "not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k). Courts analyze PDA claims as sex discrimination under Title VII. *Solomen v. Redwood Advisory Co.*, 183 F. Supp. 2d 748, 752 (E.D. Pa. 2002).

### a. Disparate Treatment vs. Disparate Impact

A pregnant employee may make a claim for discrimination by alleging either "disparate treatment" or "disparate impact" discrimination. *Ricci v. DeStefano*, 557 U.S. 557, 577–78 (2009). Disparate treatment is a form of intentional employment discrimination; it occurs when an employer singles out a person or a group of employees and treats them differently than other employees who do not share the same protected classification. *Id.* at 577. Disparate impact, however, is a form of unintentional employment discrimination. *Id.* A pregnant worker alleges a disparate impact claim when she asserts that her employer's policies—although facially neutral—disproportionally affect pregnant workers. *See Newark Branch, NAACP v. Town of Harrison*, 940 F.2d 792, 798 (3rd Cir. 1991); *see also EEOC v. Metal Serv. Co.*, 892 F.2d 341, 348 (3rd Cir. 1990). Unlike disparate treatment claims, which focus on the employer's intent, disparate impact claims focus on the effects of the employer's policies.

In alleging that Defendant's failure to accommodate was motivated by Plaintiff's membership in a protected class—that is, her pregnancy—Plaintiff advances a disparate treatment claim. Accordingly, Counts III and IV will be analyzed under the disparate treatment framework.

### b. Disparate Treatment Liability

A plaintiff alleging disparate treatment must show that her employer intentionally discriminated against her because she was pregnant. *Young*, 135 S. Ct. at 1345. A plaintiff can demonstrate intentional discrimination through either direct or indirect evidence. *Id.* Evidence is direct when it "would prove the prohibited intent without resort to an inference or presumption." *U.S. Equal Employ. Opportunity Comm'n v. Bob Evans Farms, LLC*, 275 F. Supp. 3d 635, 651 (W.D. Pa. 2017) (citing *Torre v. Casio, Inc.*, 42 F.3d 825, 829 (3d Cir. 1994)). Evidence is

indirect—or circumstantial—when an inference of intentional discrimination may be drawn. *Id.* at 652. If a plaintiff relies on indirect evidence to prove discrimination, the claim is "analyzed under the burden shifting framework provided by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 465 (3d Cir. 2005).

### c. Prima Facie Case

To establish a prima facie case of pregnancy discrimination under the *McDonnell Douglas* framework, a plaintiff must show that: (1) she was pregnant; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) similarly situated individuals not in plaintiff's protected class were treated more favorably or there is a nexus between her pregnancy and the adverse employment action. *See Young*, 135 S. Ct. at 1353–54, *Laverty v. Drexel Univ.*, No. 14-5511, 2016 WL 245307, at *6 (E.D. Pa. Jan. 21, 2016). This framework "is not intended to be an inflexible rule . . . . Rather, an individual plaintiff may establish a prime facie case by showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under Title VII." *Young*, 135 S. Ct. at 1353–54 (internal citations omitted) (internal quotations omitted). Once a plaintiff has established a prima facie case, the burden then shifts to the employer to articulate some "legitimate, non-discriminatory reason for its actions." *Id.* at 1354. If the employer satisfies this burden, the burden shifts to the plaintiff to demonstrate that the employer's proffered reasons are pretextual. *Id.*

Here, Defendant concedes that Plaintiff satisfied the first and second elements of her pregnancy discrimination claim, thus, the Court will only address the third and fourth factor in its analysis.

*1. Adverse Employment Action*

An adverse employment action is an action that is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001). To show that she was subjected to an adverse employment action, Plaintiff claims that she was forced to resign due to Defendant's refusal to accommodate her pregnancy-related restrictions. Such a forced resignation, if proven, is called a "constructive discharge." To prove constructive discharge, a plaintiff must demonstrate that the working conditions became so intolerable that a reasonable person in the employee's position would have felt compelled to resign. *See Brooks v. CBS Radio, Inc.*, 342 F. App'x. 771, 777 (3d Cir. 2009). "In determining whether an employee was forced to resign, [courts] consider a number of factors, including whether the employee was threatened with discharge, encouraged to resign, demoted, subject to reduced pay or benefits, involuntarily transferred to a less desirable position, subject to altered job responsibilities, or given unsatisfactory job evaluations." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 169–70 (3d Cir. 2013). The Third Circuit has also specified "that in most situations, a prerequisite to a successful constructive discharge claim is that plaintiff attempted to explore alternatives before electing to resign." *Tourtellotte v. Eli Lilly & Co.*, Civ. A. No. 09-0774, 2013 U.S. Dist. LEXIS 54389, at *16–17 (E.D. Pa. Apr. 16, 2013) (Tucker, J.) (quoting *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 975 (3d Cir. 1998)).

Defendant argues that Plaintiff did not suffer an adverse employment action in the form of a constructive discharge and, thus, cannot support her claim of pregnancy discrimination. Def.'s Am. Mem. Supp. Mot. Summ. J. 20, Doc. 25. Defendant contends that Plaintiff "cannot demonstrate that her work conditions were so intolerable as to constitute a constructive discharge." Def.'s Am. Mem. Supp. Mot. Summ. J. 18, Doc. 25. To support this assertion,

Defendant explains that the Hospital undertook various measures to accommodate her pregnancy by providing her with: (1) lead equipment; (2) a vest and thyroid shield; (3) an individual badge and a fetal monitoring badge to measure Plaintiff and her baby's exposure to radiation; (4) access to portable lead shields; and (5) "the option to step out of the operating room when necessary." Def.'s Am. Mem. Supp. Mot. Summ. J. 18, Doc. 25.

Defendant further highlights that Plaintiff did not voice any concerns to her supervisor or ask to be switched to a different room upon learning that she was assigned to a room using bone cement; Defendant maintains that instead, Plaintiff just "walked off the job." Def.'s Am. Mem. Supp. Mot. Summ. J. 19, Doc. 25. And lastly, Defendant argues that "Plaintiff's constructive discharge claim must fail because she [] [did not] explore alternative options before electing to resign." Def.'s Am. Mem. Supp. Mot. Summ. J. 19, Doc. 25.

Plaintiff responds that "sufficient evidence exists for a jury to find that [she] suffered an adverse employment action in the form of a constructive discharge and in Defendant's refusal to accommodate [her] pregnancy-related restriction." Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. 13, Doc 27. Plaintiff explains that "disputed issues of fact exist as to whether Defendant's handling of Plaintiff's [physicians'] notes left her with no reasonable choice but to resign." Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. 13, Doc 27. Plaintiff further maintains that issues of fact exists as to whether she had any viable [alternative] options to consider." Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. 17, Doc 27.

On this record, a genuine issue of material fact exists as to whether Plaintiff suffered an adverse employment action in the form of a constructive discharge by way of Defendant's handling of her physicians' notes and proposed accommodations. Here, Plaintiff claims that when she provided Ms. Leichner—Director of Perioperative Services—with her physician's note

regarding fluoroscopy, Ms. Leichner informed her that the note "was too restrictive and that [Plaintiff] would [] [not] be able to work in [Ms. Leichner's] department if [Plaintiff] submitted t[he] note." Pl. Dep. 37:21–25, 38:1–2; *see* Patricia Leichner Dep. 36:11–24, 37:1–8; 43:1–5. Further, when Plaintiff spoke with Mr. Miltner—Senior Employee Relations Specialist—he also informed her that she could look for other jobs within Defendant's health system if she decided not to work in ORs where fluoroscopy was used, but that Plaintiff would have to reapply through the general application process. Pl. Dep. 46:24–25, 47:1–10; Def.'s Am. Mem. Supp. Mot. Summ. J. 6, Doc 25; Barry Miltner Dep. 73:12–24. A reasonable jury could find that Plaintiff felt forced to resign when deciding between her physicians' instructions of zero fluoroscopy/bone cement exposure for her unborn baby's safety; Defendant's proposed accommodation of limited exposure; and reapplying for positions within Defendant's health system through the general application process. Pl.'s Mem. Opp'n Def.'s Mot. Summ. J., Ex. H (Notes of Patricia Leichner), Doc 27; Barry Miltner Dep. 102:6–24, 103:1–5.

Under these circumstances, a reasonable juror could fairly conclude that Plaintiff was subject to an adverse employment action. Accordingly, because there are genuine issues of material fact, Plaintiff has sufficiently created a triable issue as to whether her work conditions were so intolerable that she felt forced to resign.

### 2. *Nexus between Plaintiff's pregnancy and the adverse employment action*

Under the fourth prong of Plaintiff's prima facie case, she must establish that similarly situated individuals not in plaintiff's protected class were treated more favorably or that there is a nexus between her pregnancy and the adverse employment action. *See Young*, 135 S. Ct. at 1353–54, *Laverty v. Drexel Univ.*, No. 14-5511, 2016 WL 245307, at *6 (E.D. Pa. Jan. 21, 2016). Plaintiff can satisfy the fourth prong by: (1) presenting evidence that similarly situated,

15

non-pregnant employees were treated more favorably; (2) establishing an inference of discrimination based upon the temporal proximity between the pregnancy and the adverse act; or (3) establishing an inference of discrimination based upon review of all proffered evidence. *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 366 (3d Cir. 2008), *Leboon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232–233 (3d Cir. 2007), *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000), *Laverty*, 2016 WL 245307, at *6, *Snider v. Wolfington Body Co., Inc.*, No. 16-2843, 2016 WL 6071359, at *3 (E.D. Pa. Oct. 17, 2016), *Ahern v. Eresearch Tech., Inc.*, 183 F. Supp. 3d 663, 669 (E.D. Pa. 2016).

Here, Plaintiff has presented sufficient evidence to establish a triable issue of fact as to whether there is a nexus between her pregnancy and the adverse employment action. Plaintiff, for example, contends that "Defendant did not offer [her] a Leave of Absence and/or Time Off as a Reasonable Accommodation due to pregnancy pursuant to its Unpaid Leave[] of Absence Policy" and "instead, [] only offered Plaintiff 'an unpaid Personal Leave of up to thirty (30) days (with no extension).'" Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. 8, Doc 27. Plaintiff also maintains that Defendant could have accommodated her physicians' notes of zero exposure to fluoroscopy and bone cement because "there was always an operating room that did not use those substances." Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. 9, Doc 27; *See* Rena Utsey Dep. 63:5–15 (stating that it was possible for Plaintiff to be assigned to rooms with no fluoroscopy). Plaintiff claims that Defendant never attempted to reassign her to a different room despite her physicians' orders. Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. 10, Doc 27; *See* Barry Miltner Dep. 72:23–24, 73:1–2.

Given the evidence that Plaintiff has put forth concerning the fourth element of her prima facie case, there is a question of fact for the jury, and not the court to determine.

### *3. Pretext*

Once a plaintiff has met her burden of establishing her prima facie case, the burden then shifts to the defendant to articulate some "legitimate, non-discriminatory reason for its actions." *Young*, 135 S. Ct. at 1354. If the defendant satisfies this burden, the plaintiff can demonstrate that the defendant's proffered reasons are pretextual. *Id.* Here, even assuming that Defendant satisfied its burden of producing legitimate, nondiscriminatory reasons—Defendant did not address this in its briefing—there is sufficient evidence in the record to raise a genuine dispute of material fact regarding whether those reasons are pretextual. Therefore, the Court denies summary judgment as to Count III.

### ii. PHRA

Count IV of Plaintiff's Complaint alleges pregnancy discrimination in violation of the PHRA. The PHRA prohibits employers from discriminating based on the sex of an employee. 43 Pa. Cons. Stat. Ann. § 951 *et seq*. This includes discrimination based on pregnancy. *Cerra v. East Stroudsburg Area Sch. Dist.*, 299 A.2d 277, 279–80 (Pa. 1973). When a plaintiff alleges violations of the PDA and PHRA, both claims are subject to the same Title VII analysis. *See Kelly*, 94 F.3d at 105, *Smith v. Pathmark Stores, Inc.*, No. 97-1561, 1998 WL 309916, at *3 (E.D. Pa. June 11, 1998) ("Courts have uniformly interpreted the PHRA consistent with Title VII."). Accordingly, Plaintiff's pregnancy discrimination claim under the PHRA is properly analyzed under the same standard as her pregnancy discrimination claim under the PDA. As such, the foregoing analysis applies equally to Plaintiff's PHRA claim. Because genuine issues of fact exist with respect to Plaintiff's PDA claim, the Court also denies summary judgment as to Count IV.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART. Judgment is entered in favor of Defendant and against Plaintiff on Counts I and II for disability discrimination only. Counts III and IV remain. An appropriate order follows.